# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS HARVEY MERCHANT, CDCR #E-79892<br><br>                      Plaintiff,<br>vs.<br>H. LOPEZ, P. WEITZEIL, R. MADDEN,<br>                      Defendants. | Civil No.   09-856-WQH-NLS<br><br>**ORDER** |

HAYES, Judge:

      The matters before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 58) and Defendants' Motion for Summary Judgment (ECF No. 60).

## I.    Procedural History

      On April 22, 2009, Plaintiff, a state prisoner proceeding pro se and in forma pauperis, filed a Complaint alleging claims pursuant to 42 U.S.C. § 1983. (ECF No. 1).

      On September 11, 2009, Defendants Lopez, Weitzeil and Madden filed a Motion to Dismiss Plaintiff's Complaint, or in the alternative, a Motion for More Definite Statement. On December 23, 2009, the Court granted in part and denied in part Defendants' Motion to Dismiss and denied Defendants' Motion for More Definite Statement. (ECF No. 13). All claims against Defendant Madden were dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants Lopez and Weitzeil were ordered to file an Answer to Plaintiff's retaliation claims, which are the only remaining claims in this action.

1  On September 23, 2010, Plaintiff filed his Motion for Summary Judgment. (ECF No. 58).
2 On October 1, 2010, Defendants filed their Motion for Summary Judgment. (ECF No. 60).

3  On October 8, 2010, the Court advised Plaintiff of his rights and obligations to oppose
4 Defendants' Motion pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand*
5 *v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc).[1]

6  Both parties filed an opposition[2] and a reply to the respective Motions, and Defendants
7 filed evidentiary objections. (ECF Nos. 66-71).

8 **II.     Factual submissions**

9  At all relevant times, Plaintiff was an inmate at Calipatria State Prison. (Pl.'s Statement
10 of Facts, ECF No. 58 at 8). From August 2007 to May 2008, Plaintiff was assigned as a paid
11 scullery worker in the prison Food Services Department. *Id*. at 8, 10.

12  Defendant Weitzeil is an Office Technician in the Food Services Department at Calipatria
13 State Prison. (Weitzel Decl. ¶ 3, ECF No. 60-3). Defendant Lopez is the Assistant Correctional
14 Food Manager in the Food Services Department. (Lopez Decl. ¶ 2, ECF No. 60-3).

15  In September and November of 2007, Plaintiff "inquired about [a] clerical position to
16 Defendant Weitzeil [in the main office of the Central Kitchen]." (Pl.'s Statement of Facts, ECF
17 No. 58 at 8). Weitzeil stated that during these exchanges, Plaintiff "blocked [her] path" and
18 "stated he would like to work in [Weitzeil's] office as [her] clerk." (Weitzeil Decl. ¶ 4, ECF No.
19 60-3). Weitzeil stated that she "felt uncomfortable with Plaintiff's persistence and demeanor,
20 as it exceeded the typical interaction [she] would have with an inmate." *Id*.

21  Weitzeil stated that, on December 17, 2007, Plaintiff came to Weitzeil's office "in an
22 aggressive and confrontational manner" to inform her that he was "upset" she had offered the

---

[1] *Klingele* and *Rand* require the district court "as a bare minimum, [to provide a pro se prisoner] with fair notice of the requirements of the summary judgment rule." *Klingele*, 849 F.2d at 411 (quotation omitted).

[2] Defendants filed two separate Oppositions to Plaintiff's Motion. (ECF Nos. 63, 66). They both appear to be identical with the exception of the second Opposition filed which includes a declaration by both Defendants. Accordingly, because the record shows that Plaintiff was served with the second Opposition and all attached declarations, the Court will only consider the Opposition which was filed on October 22, 2010. (ECF No. 66).

clerk position to someone else. *Id.* at ¶ 5. Plaintiff testified that he "confronted Defendant Weitzeil" and stood "about three feet" from her. (Merchant Dep. at 28, 37-38, ECF No. 60-3).

Weitzeil stated that, on December 18, 2007, she "notified custody staff regarding the preceding day's events." (Weitzeil Decl. ¶ 6, ECF No. 60-3).

On January 15, 2008, "Plaintiff initiated [a] grievance against Defendants Lopez and Weitzeil, along with other non-party prison employees, for job discrimination," related to Weitzeil's failure to select Plaintiff as her clerk. (Pl.'s Statement of Facts, ECF No. 58 at 8).

On February 7, 2008, Plaintiff informed Weitzeil that he had filed an inmate appeal regarding the failure by Weitzeil to hire him as her clerk. *Id.*; *see also* Weitzeil Decl. ¶ 7, ECF No. 60-3. Weitzeil stated that she "informed [Plaintiff] that because of his actions on December 17, 2007, [she] would be uncomfortable working with an inmate who was so persistent and aggressive." (Weitzeil Decl. ¶ 7, ECF No. 60-3).

Weitzeil stated that, on February 8, 2008, Plaintiff stopped her while she was walking to her office. *Id.* ¶ 9. Plaintiff informed Weitzeil that he "wanted to resolve this issue, and [Weitzeil] informed him that as far as [Weitzeil] was concerned, the issue was resolved." *Id.* Weitzeil stated that Plaintiff then asked her if she "understood the meaning of the word 'resolve.'" *Id.* Following that exchange, Weitzeil stated that she "went to custody staff and informed them that Plaintiff was harassing and stalking [Weitzeil], and that [Weitzeil] feared that he would cause [her] physical harm." *Id.*

Defendant Lopez stated that on May 20, 2008, he observed Plaintiff staring at Weitzeil through a window in the Central Kitchen "in an aggressive and sexual manner" for "approximately five minutes." (Lopez Decl. ¶ 4, ECF No. 60-3). Lopez stated that Plaintiff turned away and began talking to another inmate when he saw Lopez. Lopez stated that he "positioned [himself] in such a way Plaintiff could not see that [he] was observing [Plaintiff]" at which time Plaintiff again "stared aggressively at Weitzeil." *Id.*; *see also* Weitzeil Decl. ¶¶ 10-11, ECF No. 60-3. Lopez stated that, "[i]mmediately following this incident, [Lopez] notified Correctional Officer Rivas of what [Lopez] observed and requested that he instruct Plaintiff to return to his work area, as Plaintiff was out of bounds and had no reason to be near the Central Kitchen's main office." (Lopez Decl. ¶ 5, ECF No. 60-3).

Plaintiff filed the affidavits of three kitchen workers who each stated that they did not see Plaintiff looking through the Central Kitchen main office window during the relevant time on May 20, 2008. (ECF No. 58-2 at 48, 50-51). Plaintiff filed his own affidavit which stated:

> Correctional Officer Rivas never mentioned that Defendant[s] Lopez or Weitzeil informed him of Plaintiff staring at Defendant Weitzeil when Defendants told him to tell Plaintiff to return back to his assigned area. Officer Rivas only stated that they wanted Plaintiff to return to his assigned area because of being out of bounds.

(Pl.'s Aff., ECF No. 58-2 at 45).

According to Defendants, on May 21, 2008, Weitzeil and Lopez "prepared a CDC 128B chrono describing Plaintiff's inappropriate behavior and requesting that Plaintiff be permanently removed from his position in the Central Kitchen." (Lopez Decl. ¶ 5, ECF No. 60-3 at ¶ 6; *see also* Weitzeil Decl. ¶ 12, ECF No. 60-3).

On April 22, 2009, Plaintiff filed the Complaint in this Court alleging he was removed from his Central Kitchen job in retaliation for filing the January 15, 2008 grievance. (ECF No. 1).

**III.    Motions for Summary Judgment**

    **A.    Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 324 (1986). The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

To avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

Cross-motions for summary judgment do not necessarily mean that there are no disputed issues of material fact, and do not necessarily permit the court to render judgment in favor of one side or the other. *See Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975). Instead, the court must consider each motion separately to determine whether any genuine issue of material fact exists. *See id.* A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The materiality of a fact is thus determined by the substantive law governing the claim or defense. *See Anderson*, 477 U.S. at 252; *Celotex*, 477 U.S. at 322; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 248).

### B.  General Standards for § 1983 liability

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see also Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

### C.  Retaliation claims

Of fundamental import to prisoners are their First Amendment "right[s] to file prison grievances," *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to "pursue civil rights litigation in the courts." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.* (citing *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995)); *see also Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir.

1989) (noting that because retaliation by prison officials may chill an inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it would not otherwise rise to the level of a constitutional violation).

"[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68 (citations omitted).

The prisoner bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. *See Pratt*, 65 F.3d at 806. At that point, the burden shifts to the prison official to show that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. *See Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995).

Retaliatory motive may be shown by direct evidence and/or by the timing of the allegedly retaliatory act and inconsistency with previous actions. *See Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). However, retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt*, 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.*

Defendants contend that Plaintiff has failed to establish a causal connection between Plaintiff's January 2008 grievance and the actions taken by Defendants Lopez and Weitzeil in May 2008 which led to Plaintiff being removed from his kitchen job. Defendants also contend that their actions in May 2008 reasonably advanced a legitimate correctional goal.

       *1.    Causal Connection*

In order to prove a § 1983 claim for retaliation, a plaintiff must produce sufficient evidence to "show that the protected conduct was a 'substantial' or 'motivating' factor in the

1 defendant's decision." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)
2 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

3     Lopez contends that at the time of the alleged staring incident on May 20, 2008, Lopez
4 was "not aware that Plaintiff had filed a grievance against him five months earlier."[3] (ECF No.
5 66 at 5; Lopez Decl. at ¶ 7, ECF No. 66-6).

6     Plaintiff contends that the Court should infer that Lopez knew of the January 2008
7 grievance because the prison has a "policy that alert[ed] defendant Lopez of alleged
8 misconduct." (ECF No. 58 at 13). Plaintiff cites to a prison regulation which states: "Every
9 allegation of employee misconduct shall be promptly, objectively, and thoroughly investigated,
10 reported, and audited." (ECF No. 58-2 at 55). Plaintiff attaches to his motion Plaintiff's January
11 15, 2008 grievance form and subsequent appeal forms. (Pl.'s Appendix J, ECF No. 58-6).
12 These forms do not indicate that Lopez was interviewed or notified of the grievance. In
13 Plaintiff's "request for second level review," Plaintiff stated that the first level reviewer
14 conducted "no interviews, investigation, or ... inquiries regarding this inmate's claims of work-
15 discrimination." *Id.* at 17. The Court finds that the prison regulation cited by Plaintiff is
16 insufficient to create a genuine issue of fact as to whether Lopez was aware of Plaintiff's January
17 2008 grievance at the time Lopez allegedly retaliated against Plaintiff.

18     Plaintiff contends that Weitzeil knew of his January 2008 grievance, and because Lopez
19 and Weitzeil worked in close proximity to each other, it "would be grossly negligent and
20 unreasonable for defendant Weitzeil to suppress such serious incidents of the stalking behavior
21 alleged by her from Defendant Lopez." (ECF No. 58 at 14). The Court finds that the fact that
22 Lopez and Weitzeil worked in the same office is insufficient to create a genuine issue of fact as
23 to whether Lopez was aware of Plaintiff's January 2008 grievance against Weitzeil. *Cf. Pratt*,
24 65 F.3d at 808 (reversing grant of preliminary injunction in § 1983 retaliation action because
25 "[i]t is sheer speculation to assume that [a prison official] discussed this one specific telephone
26 call with his superiors," who made the allegedly retaliatory decision).

27
28
---
[3] Weitzeil concedes that Plaintiff informed her of the grievance in February 2008. (Weitzeil Decl. ¶ 7, ECF No. 60-3).

Even if Plaintiff had established that there is a genuine issue of fact as to whether Lopez knew of Plaintiff's January 2008 grievance, Plaintiff must produce evidence sufficient to create an issue of fact as to whether Lopez and Weitzeil acted with retaliatory motives in May 2008. Plaintiff contends that he can show retaliatory intent based upon the affidavit of Johnny Ford; the affidavits of fellow kitchen workers who stated that they did not see Plaintiff staring at Weitzeil on May 20, 2008; and the timing of the January 2008 grievance and the alleged retaliation in May 2008.

Plaintiff submitted the affidavit of Johnny Ford, an inmate kitchen worker, who stated that, in February 2008, Ford "was informed by Assistant Food Supervisor Roderick that if [his] co-worker Merchant keeps bringing up his 602 appeal to Weitzeil, they would have him removed from the Central Kitchen." (ECF No. 58-2 at 49). Even if Ford's statement of what he was told by a nonparty was admissible at trial for the truth of the matter asserted,[4] there is no evidence to indicate that Roderick was speaking on behalf of either Lopez or Weitzeil or that Roderick's statement is otherwise probative of the retaliatory intent of either Defendant.

Plaintiff submits affidavits from three kitchen workers who each stated that they did not see Plaintiff looking through the Central Kitchen main office window during the relevant time on May 20, 2008. (ECF No. 58-2 at 48, 50-51). Even if this evidence was sufficient to create an issue of fact as to whether Defendant Lopez saw Plaintiff staring through the window at Weitzeil on May 20, 2008, that evidence alone would be insufficient to create an issue of fact as to retaliatory intent. *Cf. Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997) (jury verdict of retaliation supported by "evidence that on the same morning of the [retaliatory] incident in question [plaintiff] threatened [defendant prison guard] with a grievance," in addition to the jury's "express rejection of [defendant]'s proffered reason for the disciplinary charge").

Although "timing can properly be considered as circumstantial evidence of retaliatory intent," *Pratt*, 65 F.3d at 808, the delay between the January 2008 grievance and the alleged retaliation in May 2008 is to too great to create an issue of fact as to retaliatory intent. *Cf. Hines*,

---

[4] Defendants' object to this statement by Ford on the basis that it is inadmissible hearsay. (ECF No. 71).

108 F.3d at 268 (inmate threatened defendant with a grievance on the same day as the retaliatory incident).

Even viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to create a genuine issue of fact as to whether there is a causal connection between Plaintiff's grievance against Defendants and the actions taken by Defendants in May 2008 which resulted in Plaintiff losing his job in the kitchen.

### 2. *Legitimate Correctional Goal*

Plaintiff has the burden of showing that Defendants' actions in causing Plaintiff to be removed from his kitchen job "did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 568. "Legitimate goals of a correctional institution include the preservation of internal order and discipline and the maintenance of institutional security." *Schroeder*, 55 F.3d at 461; *cf. Pratt*, 65 F.3d at 807 ("[Courts] should afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory.") (quotation omitted).

Even if there is an issue of fact as to whether Lopez saw Plaintiff staring through the window at Weitzeil on May 20, 2008, Plaintiff has not disputed that he had "confronted" Weitzeil prior to May 20, 2008 (Merchant Dep. at 28, 37-38, ECF No. 60-3); he was "out-of-bounds" near the main office of the Central Kitchen on May 20, 2008 (Pl.'s Aff., ECF No. 58-2 at 45); and Weitzeil "no longer felt safe in Plaintiff's presence" (Weitzeil Decl. ¶ 12, ECF No. 60-3). Plaintiff has failed to create a genuine issue of fact as to whether Defendants' actions did not reasonably advance a legitimate correctional goal of maintaining institutional security in light of Weitzeil's concern for her safety.

Accordingly, Defendants' Motion for Summary Judgment is granted, and Plaintiff's Motion for Summary Judgment is denied.

### D. **Qualified Immunity**

Defendants move for summary judgment on qualified immunity grounds. Because the Court has found no genuine issue of material fact regarding the alleged violations of Plaintiff's constitutional rights, the Court need not reach any issues regarding qualified immunity. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to

resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

## IV.   Evidentiary Objections

Defendants' evidentiary objections to Plaintiff's evidence are denied as moot. (ECF No. 71).

## V.   Conclusion

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment is **DENIED** (ECF No. 58), and Defendants' Motion for Summary Judgment is **GRANTED** (ECF No. 60). The Clerk of the Court shall enter judgment for Defendants and close the case.

DATED: April 13, 2011

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge